Katherine G. Reymann (11225)
Martin S. Blaustein (3993)
**UTAH LEGAL SERVICES, INC.**
205 North 400 West
Salt Lake City, Utah 84103
Telephone & Fax:   (801) 328-8891
In-State Toll Free:   1-800-662-4245
Email: kgreymann@andjusticeforall.org
   mblaustein@andjusticeforall.org

Attorneys for Plaintiff Deborah Jones

FILED
U.S DISTRICT COURT

RECEIVED CLERK
2007 OCT -2  A 9: 06

SEP 27 2007
DISTRICT OF UTAH

U.S. DISTRICT COURT
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEBORAH JONES, <br><br> Plaintiff, <br><br> vs. <br><br> HOUSING AUTHORITY OF SALT LAKE COUNTY, <br><br> Defendant. | **VERIFIED COMPLAINT** <br><br> Case: 2:07cv00743 <br> Assigned To : Kimball, Dale A. <br> Assign. Date : 10/2/2007 <br> Description: Jones v. Housing Authority of Salt Lake County |

Plaintiff Deborah Jones (hereinafter "Ms. Jones") hereby complains against the Housing Authority of Salt Lake County, (hereinafter "Housing Authority) and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Ms. Jones is an individual residing in Salt Lake County, State of Utah.

2. The Housing Authority is a locally established and administered public body situated in Salt Lake City, Salt Lake County, Utah. The Housing Authority administers the Section 8 Housing Voucher Program for Salt Lake County.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including (1) the Violence Against Women and Department of Justice Reauthorization Act of 2005, (hereinafter "VAWA 2005") 42 U.S.C. §§ 1437f, 1437d(l)(5), and 1437d(l)(6)(A), which prohibits a housing authority from using domestic violence as a violation of a lease; (2) 28 U.S.C. 1343(a)(3), as this is a civil action arising under federal law, which regulates violations rights secured under Acts of Congress; (3) 42 U.S.C.A. 3613(c)(1) as this is a civil action arising under the Federal Fair Housing Act which allows for injunctive relief to be granted; and (4) 28 U.S.C. § 1337, as this is a civil action arising under federal housing acts, which are acts regulating commerce;

## NATURE OF THE CASE

4.      Ms. Jones received a Section 8 Voucher through the Housing Authority pursuant to Section 8 of the U.S. Housing Act of 1937 (hereinafter the "Act") 42 U.S.C. § 1437f and 24 C.F.R. § 982, *et seq.*

5.      Ms. Jones' voucher was illegally terminated by the Housing Authority after she was forced to flee from her apartment because she was a victim of domestic violence.

6.      Ms. Jones asks this court for declaratory and injunctive relief with respect to the Housing Authority's illegal termination of her Section 8 voucher.

7.      Ms. Jones seeks declaratory and injunctive relief under the Fair Housing Act, 42 U.S.C. §§ 3604(a) and (b), under the Violence Against Women and Department of Justice Reauthorization Act of 2005, 42 U.S.C. § 1437f and under her right to due process guaranteed under the Fourteen Amendment of the United States Constitution.

## **STATUTORY BACKGROUND**

### THE VIOLENCE AGAINST WOMEN AND DEPARTMENT OF JUSTICE REAUTHORIZATION ACT OF 2005

8. VAWA 2005 included amendments meant to address issues of domestic violence in low-income housing. The purpose of these amendments is to protect victims of domestic violence from discrimination on the basis of their domestic violence victim status.

9. Among other things, VAWA 2005 protects victims of domestic violence from loss of their housing assistance solely on the basis of domestic violence in their households. The statute specifically provides that "[a] public housing agency *may not* terminate assistance to a participant in the voucher program on the basis of an incident or incidents of actual or threatened domestic violence . . ." *See generally* 42 U.S.C. §§ 1437d(l)(5) and 1437d(l)(6)(A), *see also* 42 U.S.C. § 1437f (9)(A) (emphasis added).

### FAIR HOUSING ACT

10. The Fair Housing Act of 1964 prohibits discrimination on the basis of sex in housing. *See* 42 U.S.C. § 3604(a) and (b).

11. Sex discrimination in housing has a disparate impact on women who are victims of domestic violence.

12. The Fair Housing Act prohibits public housing authorities from discrimination against women on the basis of their sex in housing matters.

13. Under governing precedent, a three-pronged test applies to disparate impact claims under the Fair Housing Act. *See Mountain Side Mobile Estates P'ship. v. HUD*, 56 F.3d 1243, 1251-52 (10th Cir. 1995). In particular:

3

(a) First, a plaintiff must show discriminatory effect. "'[T]he necessary premise of the disparate impact approach is that some [housing] practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.'" *Id.* at 1251-52 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)). National and local statistics are enough to show disparate impact. *Id.* at 1251-52. Congress has found that "[w]omen and families across the country are being discriminated against, denied access to, and even evicted from public and subsidized housing because of their status as victims of domestic violence." See. VAWA 2005 42 U.S.C. §§ 14043e(3) and (4). In Utah, one woman for every five has called the police to report domestic abuse against herself or someone else. *See* Domestic Violence Incidence and Prevalence Study, Dan Jones & Associates, Inc., (April-May 1997).

(b) Second, the defendant must show a "valid non-pretextual reasons for the challenged practices." *See Mountain Side Mobile Estates,* 56 F.3d at 1251-52. The Housing Authority has shown no valid interest here. The Housing Authority terminated the Ms. Jones' assistance because she moved out before the lease was up, but she had no choice in the matter. She needed to move because of the escalating violence against her and her children.

(c) Third, the final prong is "whether the plaintiff seeks to compel the defendant affirmatively to provide housing for members of a protected class or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing." *Id.* Ms. Jones is petitioning this court for the reinstatement of her voucher. The Housing Authority is subject to federal housing laws.

4

## FACTUAL ALLEGATIONS

14. Ms. Jones married her ex-husband Mr. Jonathan Jones (hereinafter "Mr. Jones") on June 3, 2000.

15. Throughout their entire marriage Mr. Jones abused Ms. Jones with intimidation and threats as well as physical abuse.

16. Ms. Jones called the police many times during their marriage because of Mr. Jones' ongoing threats and abuse.

17. This abuse included Mr. Jones threatening to buy a gun and kill Ms. Jones, hitting her in the face, choking her, and threatening her when she tried to leave the marriage.

18. Each time Ms. Jones called the police, Mr. Jones would lie to the police and blame her for the abuse.

19. Ms. Jones applied for and received a Section 8 Voucher from the Housing Authority.

20. In connection with and pursuant to her Section 8 Voucher, Ms. Jones moved into her apartment at 6324 Borax Avenue, Kearns, Utah 84118 (the "Home") in December of 2006.

21. Ms. Jones allowed Mr. Jones to move back into the Home in January of 2007 after obtaining permission from the Housing Authority.

22. At the time that Mr. Jones moved back into the Home, the Housing Authority was aware of the previous domestic abuse by Mr. Jones because Mr. Jones had previously been arrested on February 9, 2002 for charges of Domestic Violence Assault and Domestic Violence Criminal Mischief.

23. Because of his arrest, the Housing Authority required that Mr. Jones complete a FBI background check before being allowed to move into the Home.

24. A few weeks after Mr. Jones moved into the Home, Ms. Jones discovered that Mr. Jones had begun to drink alcohol again. Among other things, Ms. Jones discovered piles of beer cans in one of the closets. This discovery was significant because, in the past, Mr. Jones' drinking had been the cause of the abuse against Ms. Jones. When Ms. Jones confronted Mr. Jones about his drinking, he became angry and began yelling and threatening her.

25. Because of Mr. Jones' long history of abuse, Ms. Jones recognized immediately that his renewed drinking would likely fuel his violence towards her and her children.

26. Ms. Jones was nevertheless frightened to call the police because she feared that Mr. Jones would again lie to the police and place the blame on her.

27. Mr. Jones' increased drinking led to increased violence towards Ms. Jones and her children. Among other things, Mr. Jones grabbed his son and his violent behavior adversely affected the children, who began to act out in school.

28. Mr. Jones became more and more threatening toward Ms. Jones, who still was frightened to call the police based on her fear of retaliation from Mr. Jones.

29. Ms. Jones did not notify the Housing Authority immediately of the foregoing events because she was scared for her personal well-being, legitimately fearful of reprisals and retaliation from Mr. Jones, ashamed, and embarrassed.

30. On February 20, 2007, Mr. Jones punched a hole in the bedroom door of the Home. Ms. Jones knew at that time that she would risk physical harm, as would her children, if she remained in the Home with Mr. Jones.

31. Ms. Jones subsequently asked Mr. Jones to leave the home because she did not want to leave her home and lose her housing subsidy. He refused to do so.

32. Ms. Jones thereafter called her caseworker, Elena Najarro at the Housing Authority, to inform her of Mr. Jones' abusive behavior and to advise her that she needed to leave the Home because she feared for her safety and for her children's safety. Ms. Jones explained that Mr. Jones had begun to drink alcohol again, that his violence toward her and her children had started to escalate, and that she needed to move before she and her children were seriously hurt.

33. Ms. Najarro refused to allow Ms. Jones to move from the Home and keep her housing assistance, instead asserting that Ms. Jones was "planning to leave anyway" and that she would have to sign a termination notice when she moved out.

34. Ms. Jones moved out of the Home on March 2, 2007 because she was frightened of Mr. Jones' escalating violence towards her and because she feared for her safety and that of her children.

35. On March 5, 2007 the Housing Authority required that Ms. Jones sign a termination notice of her housing assistance. Ms. Jones complied with this requirement and then filed a hearing request to protest the termination.

36. The hearing request filed by Ms. Jones stated that the couple were not getting along and that, because of the history of domestic violence, Ms. Jones had to leave the Home because she was afraid of Mr. Jones.

37. The Housing Authority held a hearing on April 3, 2007, at which Ms. Jones again reiterated her fear of Mr. Jones and her reasons for leaving the Home.

38. Although the Housing Authority noted the history of domestic violence affecting Ms. Jones in its hearing notes, noting that Ms. Jones did not call the police because of the history of violence, it remarkably admonished her for not calling the police.

39. The Housing Authority decided that termination of Ms. Jones' Section 8 Voucher was "appropriate," in spite of being aware the domestic violence was the reason for Ms. Jones leaving the Home.

40. Subsequent to this hearing, Ms. Jones requested a meeting with Blair Parrish, the Section 8 Supervisor for the Housing Authority. During this meeting, Mr. Parrish asked Ms. Najarro to join the meeting. Ms. Najarro originally denied knowing about the domestic violence inflicted on Ms. Jones by Mr. Jones. However, Ms. Najarro later admitted to knowing about the domestic violence prior to Ms. Jones' request for a hearing. Yet Ms. Najarro proceeded to trivialize that violence against Ms. Jones by stating that, "[a] lot of people bust up doors, this might not be domestic violence."

41. Following this meeting, the Housing Authority refused to reinstate Ms. Jones' Section 8 voucher.

42. Ms. Jones contacted an attorney at Utah Legal Services for assistance with her denial, who then sent a letter requesting the Housing Authority to reconsider its decision. (*See* Exhibit A).

43. Utah Legal Services informed the Housing Authority that its decision to terminate Ms. Jones' Section 8 voucher violated VOWA 2005 because her sole reasons for moving were due to domestic violence. The Housing Authority, however, reviewed the letter and did not reverse its decision.

44.     Currently, Ms. Jones does not have a housing voucher and has been forced to pay full rent since moving out in the beginning of March 2007. Ms. Jones subsists at 125% of the federal poverty level and has struggled to make ends meet since losing her housing assistance.

45.     The Housing Authority has shown no valid interest in terminating Ms. Jones' housing assistance. The Housing Authority alleges that it terminated the assistance because Ms. Jones moved out before the lease was up, but she had no choice in the matter. She needed to move because of the escalating violence against her and her children.

46.     The Housing Authority's decision to terminate Ms. Jones' voucher because she moved from the Home during the first year of her lease was a violation of VAWA 2005, as she was forced to leave the Home due to the domestic violence.

47.     Women represent the majority of domestic violence victims in the United States. More than three million women reported some kind of domestic abuse in 1998. *See* The Commonwealth Fund, Health Concerns Across A Woman's Lifespan: 1998 Survey of Women's Health, (May 1999). In Utah, one in five women has reported domestic abuse to the police due to their own domestic violence or someone else's. *See* Domestic Violence Incidence and Prevalence Study, Dan Jones & Associates, Inc., (April-May 1997). Eighty-five percent of intimate partner violence victims were women in 2001. *See* Bureau of Justice Statistics Crime Data Brief, intimate Partner Violence, 1993-2001, (February 2003).

48.     The Housing Authority should be aware that women are more likely than men to be the victims of domestic violence.

49. The Housing Authority should be aware that VAWA 2005 strictly prohibits termination of a domestic violence victim's voucher because she was forced to move because of domestic violence.

### FIRST CAUSE OF ACTION
### Violation of VAWA 2005

50. Plaintiff hereby incorporates the foregoing allegations of this Complaint as if fully set forth herein.

51. Ms. Jones was a victim of domestic violence and was forced to move out of her apartment because of the ongoing abuse by Mr. Jones.

52. Ms. Jones, as a participant in the Section 8 Voucher Program, is protected by VAWA 2005, which prohibits public housing authorities from terminating an individual's voucher in the event that she has to move because of domestic violence. *See* 42 U.S.C. §§ 1437d(l)(5) and 1437d(l)(6)(A).

53. Ms. Jones is a victim of domestic violence under the statutory definition of domestic violence as defined in VAWA 2005, which provides that "[t]he term 'domestic violence' includes felony or misdemeanor crimes of violence committed by a current or former spouse of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction." 42 U.S.C.A. § 13925.

54.   VAWA 2005 explicitly states that an incident or incidences of domestic violence may not be used as a basis for termination of a voucher if the victim qualifies for housing assistance. *Id.*

55.   Such incidences of domestic abuse may not be regarded as a violation of the lease. *Id.*

56.   Because she feared for her safety as well as her childrens' safety, Ms. Jones was forced to vacate the Home before the end of her lease.

57.   The Housing Authority was aware of the domestic violence and knew that Ms. Jones had asked for permission to leave because of the domestic violence.

58.   Ms. Jones stated in her request for a hearing that she had been forced to move because of domestic violence.

59.   The Housing Authority alleges that because Ms. Jones moved out of her apartment prior to the end of the lease, she violated her lease and this created a basis for her termination from assistance. This allegation is unfounded because the Housing Authority was aware of the reason why Ms. Jones needed to vacate her apartment.

60.   The Housing Authority has violated VAWA 2005 by terminating Ms. Jones' voucher because of her need to escape domestic violence.

61.   Ms. Jones has been damaged by the actions of the Housing Authority and is entitled to all appropriate relief, including but not limited to damages and reinstatement of her Section 8 Voucher retroactive to March 1, 2007.

## SECOND CAUSE OF ACTION
**Violation of the Fair Housing Act, 42 U.S.C. §§ 3604 (a) and (b)—Protected Class**

62. Plaintiff hereby incorporates the foregoing allegations of this Complaint as if fully set forth herein.

63. The Fair Housing Act provides a remedy and relief for persons who have suffered discrimination under the Act. 42 U.S.C. 3613(c)(1).

64. Ms. Jones, a woman, is a member of protected class under the Fair Housing Act, 42 U.S.C. §§ 3604 (a) and (b), which prohibits discrimination on the basis of sex in housing.

65. The Housing Authority intentionally discriminated against Ms. Jones on the basis of her sex and her status as a domestic violence victim when it refused to rent to her and further discriminated against her in the terms, conditions, or privileges of rental of a dwelling.

66. Ms. Jones has lost her housing assistance and subsequently suffered financially because of the Housing Authority's discrimination.

67. Ms. Jones has been damaged by the actions of the Housing Authority and is entitled to all appropriate relief, including but not limited to damages and reinstatement of her Section 8 Voucher retroactive to March 1, 2007.

## THIRD CAUSE OF ACTION
**Violation of the Fair Housing Act, 42 U.S.C. §§ 3604 (a) and (b)—Disparate Impact**

68. Plaintiff hereby incorporates the foregoing allegations of this Complaint as if fully set forth herein.

69. The Fair Housing Act provides a remedy and relief for persons who have suffered discrimination under the Act. 42 U.S.C. 3613(c)(1).

70. The Housing Authority's decision to terminate Ms. Jones' voucher because she was fleeing domestic violence has a disparate impact on women, as women represent the majority of domestic violence victims in the United States and in Utah.

71. The decision of the Housing Authority constitutes sex discrimination under the Fair Housing Act, U.S.C. §§ 3604 (a) and (b).

72. Eighty-five percent of intimate partner violence victims were women in 2001.

73. As Congress has recognized, "[w]omen and families across the country are being discriminated against, denied access to, and even evicted from public and subsidized housing because of their status as victims of domestic violence." *See* 42 U.S.C. § 14043e(3)

74. "A recent survey of legal service providers around the country found that these providers have responded to almost 150 documented eviction cases in the last year alone where the tenant was evicted because of the domestic violence crimes committed against her. In addition, nearly 100 clients were denied housing because of their status as victims of domestic violence." *Id.* at (4).

75. The Housing Authority's decision to terminate Ms. Jones' assistance, rather than allow her to move, is discriminatory on the basis on Ms. Jones' status as a domestic violence victim, causes and sustains a disparate impact, and is in violation of the Fair Housing Act.

76. Ms. Jones has been damaged by the actions of the Housing Authority and is entitled to all appropriate relief, including but not limited to damages and reinstatement of her Section 8 Voucher retroactive to March 1, 2007.

**PRAYER FOR RELIEF**

Ms. Jones and her family have been harmed by the Housing Authority's violation of VAWA 2005 and the Fair Housing Act. These violations constitute discrimination of the basis of Ms. Jones protected status as a victim of domestic violence under VAWA and as a woman under the Fair Housing Act. The Housing Authority should be enjoined from refusing to reinstate her assistance.

WHEREFORE, Ms. Jones demand that the Court:

77. Assume jurisdiction of this case;

78. Enter a declaratory judgment that the Housing Authority must strictly comply with VAWA 2005;

79. Enter a permanent injunction mandating that the Housing Authority follow VAWA 2005 and HUD regulations and that it not abuse its discretion in matters relating to domestic violence;

80. Immediately reinstate Ms. Jones housing assistance, including her Section 8 voucher, retroactive to the date of termination, March 1, 2007;

81. Refund to Ms. Jones all rents paid since she was forced to vacate her apartment due to the domestic abuse retroactive to the date of the termination, March 1, 2007;

82. Award Ms. Jones all compensatory and other damages incurred as a result of Defendant's actions; and

83. For any and all further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the *Federal Rules of Civil Procedure*, Ms. Jones demands a trial by jury in this action on all issues triable thereto.

DATED this 16th day of September 2007.

UTAH LEGAL SERVICES, INC.

*Katherine G. Reymann*
Katherine G. Reymann
Attorneys for Plaintiff

Plaintiff's Address:
Deborah Jones
1255 River Fringe Place #1033
West Valley City, Utah 84119

## VERIFICATION

Deborah Jones, being over eighteen years of age, hereby declares under penalty of perjury that:

1. I am the Plaintiff in the above-entitled action.

2. I have read the contents of the complaint and the same are true to my own personal knowledge, information, and belief.

DATED this 26 day of September, 2007.

_Deborah Jones_
DEBORAH JONES

16

## NOTARY CLAUSE

STATE OF UTAH,
COUNTY OF _Salt Lake_

Plaintiff, _Deborah Jones_, personally appeared before me, the undersigned Notary Public, and proved to me his/her identity with documentation in the form of _UT Drv License_ and upon being sworn and under oath, Plaintiff signed the preceding document entitled VERIFIED PETITION in my presence and acknowledged and affirmed that the information contained in the document is true to the best of Plaintiff's own personal knowledge and that Plaintiff has signed the document voluntarily for its stated purpose.

DATED this _26th_ day of _September_, 20_07_.

_____
Notary Public

```
Notary Public
GLORIA LARREA
205 North 400 West
Salt Lake City, Utah 84103
My Commission Expires
April 09, 2011
State of Utah
```

17